# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| GOOD SPORTSMAN MARKETING LLC, et al., | § § § § | |
| Plaintiffs | § § | CASE NO. 6:07CV177 PATENT CASE |
| vs. | § § | |
| NON TYPICAL, INC., et al., | § § | |
| Defendants | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Non Typical, Inc, Mark Cuddeback, and Richard Scales Advertising Associates, Inc.'s (collectively "Defendants") motion for partial summary judgment on indefiniteness (Docket No. 109). The Court **DENIES** the motion. This opinion also construes the terms of U.S. Patent Numbers 6,735,387 (the "'387 patent") and 6,758,868 (the "'868 patent").

## BACKGROUND

The '378 and '868 patents are both entitled "Motion Detector Camera." The patents generally describe a device where a camera is combined with a motion detector in order to automatically take pictures upon the motion detector's sensing movement. The '378 patent describes that the camera can operate in several states including: a "burst state," a "pause state," and a "test state." The '868 patent is a continuation-in-part of the '378 patent. Where the '378 patent only describes the device as having a conventional camera, the '868 patent teaches a similar device where the camera is a digital camera. Additionally, the '868 patent describes several additional features not recited in the '378 patent including: the ability to time-stamp pictures taken by the camera,

1

manual access to the shutter of the camera, and a separate power source for the flash and the motion detector.

On April 13, 2007 Good Sportsman Marketing, L.L.C. ("Good Sportsman") and IP Holdings, Inc. ("IPH") (collectively "Plaintiffs") filed this action alleging that Defendants infringed certain claims of the '378 and '868 patents. The Court has previously construed the claims of both of the patents. *See Good Sportsman Mktg, L.L.C. v. Testa Assoc., L.L.C.*, 440 F. Supp. 2d 570 (E.D. Tex. 2006) (Davis, J). The parties have generally stipulated to those constructions. However, Defendants assert that two claims are indefinite under 35 U.S.C. § 112 because they are incapable of construction.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular

claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim

construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

A claim is indefinite if one skilled in the art would be unable to understand the bounds of the claim when read in light of the specification. *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1022 (Fed. Cir. 2009). "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Res. & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Thus, a claim is indefinite only if its meaning and scope are "insolubly ambiguous." *Id.* at 1375.

**APPLICATION**

**"in rapid succession"**

Claim 17 of the '387 patent contains the term "in rapid succession." The term is used to define the "burst state" of the camera. The Court has previously construed the term "burst state" as meaning "the camera takes a pre-determined number of pictures in rapid succession in response to one or more signals from a motion detector." *Good Sportsman Mktg,* 440 F. Supp. 2d at 576. There, the Court specifically found that the patent's specification did not define the term "in rapid succession" more precisely and that "it is a phrase potential jurors [would] be familiar with . . . ." *Id.* at 577. For those reasons, the Court declined to provide an additional definition the term. *Id.*

Nevertheless, Defendants essentially argue that the term "rapid" is insolubly indefinite because it fails to define, with mathematical precision, the amount of pictures that must be taken per unit of time in order to meet the limitation. Defendants' assertion suggests that "rapid" is entirely subjective. However, they do concede that the specification provides guidance to the meaning of "rapid" by contrasting a "burst state" with the camera's "pause state." For instance, with respect to the "pause state" the specification provides that "[i]n one embodiment, the controller is programmable by a user so that the time of the pause between possible exposures is set optionally between 1 to 60 minutes." *See* '378 Patent at 4:41-44. In contrast, the specification describes that the "burst state," in one embodiment, allows the user to "provide anywhere between 1 and 9 exposures per triggering event." *See id.* at 4:33-35. Inherent in the patent's description of the user's ability to select the number of exposures taken in the "burst state" is the understanding that a user does not control the rate that those exposures are taken. This fact is further bolstered by the specification's description of the "pause state" where, as quoted above, a user does control the rate

that the camera takes exposures.

Defendants produce various declarations by their experts concluding that one skilled in the art could not determine the meaning of "in rapid succession" because it is not defined within the patent with mathematical precision and has no mathematically precise meaning within the art. *See* Stoneburner Decl., Docket No. 109-8 at ¶ 23; Laws Decl., Docket No. 109-13 at ¶¶ 7-9. These extrinsic statements misapply the law. A claim term is not indefinite simply because it does not describe or define the invention with mathematical precision. *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 388 F.3d 1368, 1372 (Fed. Cir. 2003). In fact, terms of degree are often used in patent claims for the specific purpose of avoiding having to define a claim with precise mathematical precision. *Ecolab, Inc. v. Environchem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (explaining that the term "substantially" was used in claim terms to avoid mathematical precision). Furthermore, a term does not have to be specifically explained in the specification to be understood by one skilled in the art. *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1217 (Fed. Cir. 2003) (finding that the term "computer" was commonly recognized by those skilled in the art without the necessity of further description in the specification). Thus, Defendants' experts' assertions that their understanding of "rapid" requires mathematical precision is irrelevant to the issue of indefiniteness.

"Rapid" is commonly understood to mean "moving, acting, or occurring with great speed." *See* The American Heritage College Dictionary 1032 (3d ed. 1997). The parties agree that neither the specification nor the prior art attach a specialized meaning to the term. Within the context of the patent and the general field of photography, the "great speed" at which exposures can be taken is inherently limited by the physical capabilities of a camera. The term "rapid" is further limited by

the claims themselves because of the contrast between a "burst state" (where there is no control over the speed of exposures) and a "pause state." Thus, the term "in rapid succession" within the context of the claims would be commonly understood to mean "one after another without any intentional delay or pause such as in the pause state." However, given that the term "rapid" is commonly understood and the contrast between "burst" and "pause" states is inherent within the claims themselves, it is not necessary to further limit or clarify the term. Therefore, while "in rapid succession" is not insolubly ambiguous, it does not need further construction beyond its plain and ordinary meaning. Accordingly, Defendants' motion is denied with respect to claim 17 of the '387 patent. To the extent that this claim term arises at trial, the Court instructs the parties to tailor their trial arguments to accord with this Order.

**"digital camera electronics"**

Claims 3, 10, 17, 24, and 29 of the '869 patent contain the term "digital camera electronics." Defendants argue that the term in claim 10 (the only one of these claims asserted against Defendants) is indefinite because it is not defined in the specification. While Defendants are correct that the term "digital camera electronics" is not used in the specification and only appears in the summary of the invention and the claims themselves, the term "digital camera components" appears multiple times throughout the specification. For instance, the specification recites examples of "digital camera components including a light sensitive chip and one or more outputs (such as video out outputs or a USB port) for outputting the digital images to a TV, a computer, or a storage device." '868 Patent at 6:50-55. The specification further explains that "[a] digital camera can also include a removable or permanent flash memory card to hold images. In one example, an 8 Mbyte flash memory is provided to hold up to 116 images." *Id.* at 54-57; *see also* '868 Patent at 9:52-58; 7:52-57.

Defendants do not argue that one skilled in the art would lack understanding of the specification's term "digital camera components." Rather, they argue that the doctrine of claim differentiation requires that the term be defined differently than "digital camera electronics" used in the claims. Defendants' argument misunderstands and misapplies the law of claim differentiation.

Claim differentiation creates a presumption that each claim in a patent has a different scope and is "not a hard and fast rule of construction." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Furthermore, as the Federal Circuit has explained, "claim differentiation refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim. Thus, the claim differentiation tool works best in the relationship between independent and dependent claims." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006). Because the term "digital camera components" is not used in the claim language, but rather the specification, the doctrine of claim differentiation does not apply.

Instead, it is clear from the specification's use of the term "digital camera components" that the term is synonymous with the claim term "digital camera electronics." In fact, the specification's detailed explanation of "digital camera components" is highly relevant in understanding the definition of "digital camera electronics." *See Phillips*, 415 F.3d at 1314-15 ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"). Though the term "component" used in the specification is different from the term "electronics" in the claims, it is exceedingly clear from the context of those terms that their meanings are synonymous. *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1143-46 (Fed. Cir. 2005) ("Different terms or phrases in separate claims may be construed to

cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper."). Thus the term "digital camera electronics" is not ambiguous or unexplained in the specification because it simply refers to "digital camera components" which are thoroughly explained and referenced in the patent's specification. Accordingly, Defendants' motion for summary judgment is denied with regard to claim 10 of the '868 patent.[1]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**. Because the parties have stipulated to the Court's claim construction in *Good Sportsman Mktg, L.L.C. v. Testa Assoc., L.L.C.*, 440 F. Supp. 2d 570 (E.D. Tex. 2006), those definitions are provided in Appendix A to this opinion.

**So ORDERED and SIGNED this 10th day of August, 2009.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

---

[1] Defendants also argue that claim 17 of the '387 patent and claim 10 of the '868 patent are invalid for lack of an adequate written description or for lack of enablement. However Defendants' briefing on these issues simply incorporates their indefiniteness arguments under different headings. Since neither of these claims are indefinite, Defendants' arguments regarding written description and enablement are similarly rejected.

9

# APPENDIX A

| U.S. Patent No. 6,735,387 |||
|---|---|---|
| Claim | Claim Language (with language to be construed emphasized) | Court's Construction (All Agreed) |
| 17 | A method of controlling a **motion detector camera**, the method comprising: | "motion detector camera" – a digital or mechanical film-based camera that takes pictures when it detects motion |
|  | providing the camera with |  |
|  | **a burst state,** | "burst state" – the camera takes a pre-determined number of pictures in rapid succession in response to one or more signals from a motion detector |
|  | **a pause state**, and | "pause state" – the camera delays taking a picture for a predetermined amount of time in response to one or more signals from a motion detector |
|  | **a test state**; | "test state" – a test light emits light suddenly or in intermittent bursts in response to one or more signals from a motion detector, but the camera does not take a picture |
|  | **selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state**; | "selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state" – the motion detector camera is placed automatically or by the user into at least one of a burst state, a pause state, and a test state |
|  | **receiving a signal from a motion detector**; | "receiving a signal from a motion detector" – one or more signals from the motion detector are received |
|  | if in the burst state, **sending a signal** to | "sending a signal" – sending one or more signals |
|  | **a camera mechanism** | "camera mechanism" – the functional components of the motion detector camera |
|  | **to cause the camera mechanism to take a pre-determined number of pictures in rapid succession;** | to cause the camera mechanism to take a predetermined number of pictures in rapid succession" – two or more pictures are taken in rapid succession in response to a triggering event |
|  | if in the pause state, **ignoring the signal from the motion detector** until a predetermined amount of time has passed; and | "ignoring the signal from the motion detector" – one or more signals from the motion detector are disregarded |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction (All Agreed) |
|---|---|---|
| | if in the test state, **sending a signal to a test light to cause the test light to flash** while not sending any signals to the camera mechanism which would cause the camera mechanism to take a picture. | "sending a signal to the test light to cause the test light to flash" – sending one or more signals to the test light to cause the test light to emit light suddenly or in intermittent bursts |

| U.S. Patent No. 6,768,868 ||
|---|---|
| Claim | Claim Language (with language to be construed emphasized) | Court's Construction (All Agreed) |
|---|---|---|
| 7 | A **motion detector camera** comprising: | "motion detector camera" is a device used for taking pictures recorded on a film or digital medium in response to detected movement |
| | **a camera mechanism**; | "camera mechanism" is device used for taking pictures through conventional, mechanical means or through use of digital components, and includes a stand-alone camera that can be used independently when removed from the housing of the motion detector camera |
| | **mounted inside a housing**; | "housing" – a cover or enclosure<br><br>"mounted inside a housing" – secured inside a housing |
| | a motion detector | |
| | **exposed on a surface of the housing**; | "exposed on a surface of the housing" – visible on the outside of the housing |
| | an **activity counter** | "activity counter" – a device for counting and displaying the number of triggering signals received by the controller from the motion detector |
| | **mounted to the housing** | "mounted to the housing" – secured to the housing |
| | the activity counter for displaying a number of **triggering signals**; | "triggering signals" – signals sent from a motion detector in response to activity detected by the motion detector |
| | **a controller** | "controller" means a device that controls the functions of the motion detector camera |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction (All Agreed) |
|---|---|---|
| | having at least two **operating modes**, | "operating mode" – a functional status which the controller can be placed in by the user or automatically without user intervention |
| | wherein in a **first mode** | "first mode" – the controller causes the camera mechanism to capture an image when it receives a triggering signal from the motion detector |
| | **the controller activates the camera mechanism** | "the controller activates the camera mechanism" means the controller causes the camera mechanism to take a picture |
| | **when the controller receives a triggering signal from the motion detector** | "triggering signal" – one or more signals sent from the motion detector in response to activity detected by the motion detector |
| | wherein in a **second mode** | "second mode" – the controller increases the number of the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the motion detector |
| | **the controller increases the number of the activity counter** | "the controller increases the number of the activity counter" – the controller increases the number of the activity counter |
| | and **does not activate the camera mechanism** | "does not activate the camera mechanism" means the controller does not cause the camera mechanism to take a picture |
| | **when the controller receives a triggering signal from the motion detector**. | "triggering signal" has same meaning as indicated above |
| 8 | The motion detector camera of claim 7 | |
| | wherein in the **first mode** | "first mode" – same meaning as indicated above |
| | the controller activates the camera mechanism | same meaning as indicated above |
| | and **increases the activity counter** | "increases the activity counter" – increases the number of the activity counter |
| | **when a triggering activity occurs**. | "triggering activity" – activity that is detected by the motion detector |
| 9 | The motion detector camera of claim 7 | |
| | wherein the controller includes a **third mode** | Construction not requested |
| | wherein the **controller activates a test light** | "the controller activates a test light" means the controller illuminates a test light |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction (All Agreed) |
|---|---|---|
| | and **does not activate the camera mechanism** | "does not activate the camera mechanism" means does not cause the camera to take a picture |
| | **when a triggering activity occurs**. | "triggering activity" means the same as indicated above |